UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
KAI HOO LOO and AH FAN CHAN,　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　Plaintiffs,　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:　　**MEMORANDUM AND ORDER**
　　　　　　　　　　　　-against-　　　　　　　　　:　　04 CV 5553 (DLI)(RML)
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:
THOMAS RIDGE, MICHAEL J. GARCIA　　:
JOHN CARBONE, MARY ANN GANTER,　 :
THE DEPARTMENT OF HOMELAND　　　　 :
SECURITY, UNITED STATES　　　　　　　　 :
IMMIGRATION AND CUSTOM　　　　　　　　:
ENFORCEMENT, UNITED STATES　　　　　 :
CITIZENSHIP AND IMMIGRATION　　　　　:
SERVICES,　　　　　　　　　　　　　　　　　　　　　 :
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　Defendants.　　:
------------------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge**:

On December 20, 2004, plaintiffs Kai Hoo Loo ("Loo") and Ah Fan Chan ("Chan") petitioned this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds that the defendants'[1] final order of removal of Loo violated various federal immigration laws ("Count One") and the Fifth Amendment Due Process Clause ("Count Two"). With respect to Chan, the petition requests that the court compel the defendants to adjudicate her and Loo's adjustment of status applications or, in the event that Loo's application had already been denied, to review the denial of Loo's adjustment application ("Count Three"). Defendants oppose the petition and further request that the court vacate its order dated December 21, 2004 staying Loo's removal. For the reasons set forth below, Loo's claims are transferred to the Second Circuit for

---

[1] Pursuant to Fed R. Civ. Pro. 25(d), the current public officers are automatically deemed substituted for those who have ceased to hold office.

adjudication and Chan's claims are denied without prejudice. The stay of Loo's removal remains in effect.

## Background

Loo, a Malaysian Citizen, first entered the United States on a visitor's visa in 1988. Affirmation of Ruchi Thaker in Support of Petition ("Ruchi Aff.") ¶ 4. Chan, who claims to be Loo's wife, entered the United States in 1997 on a visa. *Id.* Chan and Loo have two children, both of whom are citizens of the United States. *Id.* at ¶ 5.

Loo's visa apparently expired, and, on March 4, 1998, upon returning from a trip to Malaysia, he was detained at John F. Kennedy International Airport and deported from the United States pursuant to § 235(b)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(b)(1). That provision allows an immigration officer to "order the alien removed from the United States without further hearing or review" if the individual lacks, *inter alia,* a valid, unexpired visa. 8 U.S.C. § 1225(b)(1). A copy of the March 4, 1998 removal order is annexed to the Declaration of Elliot M. Schachner ("Schachner Decl.") as Exhibits 1 and 2. Undeterred, Loo reentered the country four days later on March 8, 1998. Schachner Decl. Exhibit 3. Loo did so overland by way of Canada and was not inspected at the border. *Id*.

Having re-entered the country, Loo lived with his wife and children for the next several years, without incident. Ruchi Aff. ¶ 25. On October 28, 2002, Chan applied to adjust her status to that of a lawful permanent resident of the United States, based on sponsorship by her employer, pursuant to INA § 245(I), 8 U.S.C. 1255(I). Ruchi Aff. ¶ 14; Schachner Decl. Exhibit 7. On that same day, October 28, 2002, Loo also applied to adjust his status to that of lawful permanent resident as a derivative beneficiary of Chan's application. Ruchi Aff. ¶ 14, Exhibit

2

A; Schachner Decl. Exhibit 4. The defendants promptly acted on Loo's application and transferred the case from their Chicago office to their New York office in November of 2002. Ruchi Aff. Exhibit D. Two years later, on September 30, 2004, Loo was fingerprinted in connection with his application. Ruchi Aff. Exhibit B. Then, on December 16, 2004, Loo was asked to attend an interview at 26 Federal Plaza in connection with his adjustment of status application. Ruchi Aff. ¶ 14. Upon arrival, Loo was taken into custody and interviewed regarding his March 1998 illegal reentry into the United States. Schachner Decl. Exhibit 3. On that same day, December 16, 2004, defendants issued a "Notice of Intent/Decision to Reinstate Prior Order." *Id.* Under the order, defendants deemed Loo removable pursuant INA § 241(a)(5), 8 U.S.C. § 1231(a)(5) for having "illegally reentered the United States after having been previously removed . . . while under an order of removal . . . and therefore subject to removal by reinstatement of the prior order." Schachner Decl. Exhibit 5. Loo and Chan immediately started the instant proceeding and by so doing, stayed Loo's removal. To date, Loo remains in the physical custody of the defendants. Ruchi Aff. ¶ 20.

Meanwhile, in sharp contrast to Loo's swift removal, over four years from the date she submitted it, Chan's application for an adjustment of status has not yet been determined. There is no evidence in the record that defendants have even begun to process it.

## Discussion

Counts One and Two

With respect to Counts One and Two of the petition, three months after Loo and Chan put in their reply, Congress passed the REAL ID Act of 2005 § 106, 8 U.S.C. § 1252 (2005). The REAL ID Act, in part, amended § 242 of INA to strip federal district courts of subject

3

matter jurisdiction over petitions for habeas corpus review of an "order of removal" entered under INA and transferred jurisdiction to the Court of Appeals for the district in which the removal order was entered. The transfer applies to petitions pending on the date of the act. *See* 8 U.S.C. § 1252 (2005); *Marquez-Almanzar v. INS*, 418 F.3d 210, 212 (2d Cir. 2005) ("[t]he REAL ID Act eliminates habeas corpus review of orders of removal and requires that any § 2241 petition pending in the district court at the time of its enactment be transferred to the court of appeals in which the petition could have been properly brought as a petition for review from a final order of removal under 8 U.S.C. § 1252."). Thus, the Court of Appeals for the Second Circuit, and not this court, has jurisdiction over Loo's petition.[2] Therefore, the court transfers Counts One and Two of the habeas petition to the Second Circuit Court of Appeals for review of the defendants' December 16, 2004 decision to reinstate Loo's (A#75-795-885) March 4, 1998 order of removal. Schachner Decl. Exhibit 7; *see also* 8 U.S.C. § 1252 (b)(9).

Count Three

With respect to Count Three, the December 16, 2004 reinstatement order was made pursuant to INA § 241(a)(5), 8 U.S.C. § 1231(a)(5), which states

> [i]f the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry."

---

[2] It should be noted that in as much as Counts One and Two challenge Loo's removal order on constitutional grounds, the REAL ID Act does not prevent these claims from being raised before the Second Circuit Court of Appeals. The act provides that "[nothing in . . . any . . . provision of this Act (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(2)(D); *Xian JI Chen v. USDOJ*, 434 F.3d 144, 149 (2d Cir. 2006) ("so far as petitioner contends that the [immigration judge] violated her rights pursuant to the Due Process Clause, we hold that we possess jurisdiction to review under Section 106").

8 U.S.C. § 1231(a)(5). Based on the plain language of the statute, the reinstatement of Loo's prior order of deportation precludes *any* relief – including Loo's ability to have his status adjusted. *Fernandez-Vargas v. Gonzales*, 126 S.Ct. 2422, 2431, 165 L.Ed.2d 323 (2006) ("the application [of INA § 241(a)(5) denies] Fernandez-Vargas the opportunity for adjustment of status."). Thus, if the Second Circuit affirms defendants' December 16, 2004 decision to reinstate Loo's March 4, 1998 order of removal, Loo would be denied the opportunity for his status to be adjusted because, by virtue of the order of removal, Loo would not meet the admissibility requirements of 8 U.S.C. § 1255(a)(2). *Id.* However, should the Second Circuit vacate Loo's INA § 241(a)(5) removal order, then Loo would retain the opportunity to have his status adjusted because he may no longer be inadmissible as a matter of law. When inadmissability is an issue of law, rather than an issue of discretion, there is no jurisdictional bar to the Second Circuit determining whether defendants were in error to deny the application for adjustment. *See Rodriguez v. Gonzales*, 451 F.3d 60, 63 (2d Cir. 2006) (holding that a denial of a adjustment of status application based on the admissibility of the applicant is a "nondiscretionary judgement" that the court has "jurisdiction to review"). Under the circumstances herein, the Second Circuit is the appropriate forum to address Loo's claim. Therefore, the court also transfers Count Three of the petition to the Second Circuit to the extent that Count Three seeks review of the defendant's denial of Loo's October 28, 2002 adjustment of status application.[3] 8 U.S.C. 1231(a)(5).

---

[3] The court also notes that 8 U.S.C. 1252 (g) strips district courts of jurisdiction over " any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." *Id.* Thus, because Loo's request to revisit his application for adjustment of status, while the removal order stands, could be construed as interfering in the defendants' decision to remove him, this court would lack jurisdiction. *See Sadhvani v. Chertoff*, 06 CV 1454, 2006 WL 3196920, *7-8 (D.D.C. November 6, 2006).

However, the court retains jurisdiction over Count Three to the extent that Count Three requests defendants take action in adjudicating Chan's adjustment of status application because adjudicating that claim is not at the discretion of defendants – defendants are required to do so. Therefore, the court has jurisdiction to review Chan's non-discretionary, purely legal claim that defendants are required to review her application. *See Sepulveda v. Gonzales*, 407 F.3d 59, 63 (2d Cir. 2005) (holding that 8 U.S.C. § 1252(a)(2)(B) does not strip courts of jurisdiction to review nondiscretionary, or purely legal, decisions regarding an alien's eligibility for relief pursuant to, inter alia, § 1255).

Although there is no bar to the court determining Chan's claim, the court must still have subject matter jurisdiction to do so. Chan contends that the court has subject matter jurisdiction over their claim pursuant to the Mandamus Statute, 28 U.S.C. § 1361; the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b) and 701 *et seq.*; the Declaratory Judgement Act, 28 U.S.C. § 2201 *et seq.;* and 28 U.S.C. § 1331. *See* Verified Petition for a Writ of Habeas Corpus and Complaint ¶ 1. With respect to the Declaratory Judgement Act, it "does not by itself confer subject matter jurisdiction on the federal courts . . . [r]ather, there must be an independent basis of jurisdiction before a district court may issue a declaratory judgment." *Correspondent Servs. Corp. v. First Equities Corp. of Florida*, 442 F.3d 767, 769 (2d Cir. 2006). In this case there is an independent basis for jurisdiction, namely 28 U.S.C. § 1331 federal question jurisdiction in conjunction with the APA, 5 U.S.C. §§ 555(b). *See Bartolini v. Ashcroft,* 226 F.Supp.2d 350, 353 (D.Conn. 2002) (holding that jurisdiction was proper over a claim to compel adjudication of an adjustment of immigration application).

Section Six of the APA provides: "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b); *see Kim v. Ashcroft*, 340 F.Supp.2d 384, 393 (S.D.N.Y. 2004) ("failure to take any action runs afoul of section 555(b)"). Therefore, Chan's claim requires both the interpretation and application of a federal statute – the APA – and is "not patently without merit," the other element necessary for a district court to exercise federal question jurisdiction. *Id*; *Salehian v. Novak*, 06 CV 459, 2006 WL 3041109 *2 (D.Conn, Oct. 23, 2006) (holding that an APA action to require USCIS to adjudicate a application for adjustment of status was not without merit for federal question jurisdiction purposes); *Bartolini,* 226 F.Supp.2d at 354 (same).

Moreover, for the same reasons that the court finds there is no jurisdictional bar to the court's adjudication of Chan's claim, the court also finds that there is jurisdiction for the court to address Chan's claim under the Mandamus Statute, 28 U.S.C. § 1361. *See Fifth Ave. Peace Parade Committee v. Hoover,* 327 F.Supp. 238 (D.C.N.Y. 1971) ("[m]andamus under 28 U.S.C. § 1361 is appropriate only to review ministerial acts which are subject to positive command, plainly described and free from doubt"); *see also Salehian*, 2006 WL 3041109 *3. For mandamus act purposes this *not* a case where the petitioner is asking for the defendants to do something that is purely within their discretion, such as granting an interview or approving (as opposed to acting on) her application, over which the court would not have jurisdiction. *See e.g. Keane v. Chertoff,* 419 F.Supp.2d 597 (S.D.N.Y. 2006) (no mandamus jurisdiction where petitioner was asking for the defendant to rescind its decision to deny her adjustment of status application); *Espin v. Gantner*, 381 F.Supp.2d 261 (S.D.N.Y. 2005) (no jurisdiction over an

7

action to compel USCIS to *approve* adjustment application). Indeed, numerous courts have found that immigration authorities have a non-discretionary duty to adjudicate applications. *See American Academy of Religion v. Chertoff*, 06 CV 588, 2006 WL 1751254, *16 (S.D.N.Y. June 23, 2006) (holding that the regulation stating that consular officials either "issue or refuse" a completed visa creates a duty to adjudicate); *Dabone v. Thornburgh*, 734 F.Supp. 195, 200 (E.D.PA. 1990) (holding the Board of Immigration Appeals owed plaintiff a duty to adjudicate his motion to reopen an exclusion proceeding); *Yu v. Brown*, 36 F.Supp.2d 922, 931-32 (D.N.M. 1999) (holding that the INS owed plaintiff a duty to process her application for a change of status to permanent resident). Therefore, the court has jurisdiction over Chan's action pursuant to the Mandamus Act.

Having resolved that there is no jurisdictional bar and that this court has subject matter jurisdiction over Chan's claim, the court now turns to the merits of Chan's claim. Under 5 U.S.C. § 706(1) (part of the APA), courts may compel "agency action unlawfully withheld or unreasonably delayed." *Id.* In cases where the petition is seeking to compel action by immigration authorities, courts utilize the six-factor test articulated in *Telecommunications Research & Action v. F.C.C.*, 750 F.2d 70, 79 (D.C.Cir.1984) ("TRAC") to determine whether relief under the APA is warranted.[4] *See Sze v. I.N.S.,* 97 CV 0569, 1997 WL 446236 *4 (N.D.

---

[4] The TRAC factors are: (1) the time agencies take to make decisions must be governed by a "rule of reason;" (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for the rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed." *TRAC*, 750 F.2d at 80. Of course, pursuant to the first prong of the *TRAC* test, "the primary question is whether the alleged delays by the INS are unreasonable." *Sze,* 1997 WL 446236 at *5.

Cal. July 24, 1997). The most important factor in evaluating a claim like Chan's is "'the source of the delay, - e.g., the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding.'" *Batista v. U.S. I.N.S.*, 99 CV 2847, 2000 WL 204535, at *4 (S.D.N.Y. Feb 22, 2000) (quoting *Reddy v. Commodity Futures Trading Comm'n*, 191 F.3d 109, 120 (2d Cir.1999)). "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Saleh v. Ridge*, 367 F.Supp.2d 508, 512 (S.D.N.Y. 2005) (*quoting Yu*, 36 F.Supp.2d at 935). In the case at bar, there is nothing in the record that would allow the court to determine the reasonableness of the delay. Chan has not submitted an affidavit describing the nature of her application, and neither party has offered an explanation for the delay. *See Kim,* 340 F.Supp.2d at 394 (denying defendants' motion to dismiss where there was not enough evidence in the record to determine whether a delay was unreasonable). The court is not unsympathetic to Chan's plight. Defendants promptly acted on Loo's application, and in so doing determined that, not only should his status not be adjusted, but also that he should be removed. All the while, Chan's application, from which Loo's benefits would be derivative, has languished for over four years. However, at this stage, and on the facts as presented, the court can offer no relief, especially since the Supreme Court has held that evidence of the passage of time cannot, standing alone, support a claim of unreasonable delay. See *INS v. Miranda*, 459 U.S. 14, 19, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982). Moreover, the defendants are correct that "no statute or regulation requires the Government to process adjustment applications within any particular time." *Espin*, 381 F.Supp.2d at 267. Of course, nothing in this decision forecloses Chan from filing an action under the APA, the Mandamus Act or the Declaratory Judgement Act to force

defendants to adjudicate her claim upon a showing that the delay is unreasonable. *See, e.g. Salehian; Bartolini.*

*The Stay of Loo's Order of Removal*

Because the court does not have jurisdation over Loo's petition and is required to transfer it to the Second Circuit, the defendants argue that only the Second Circuit, and not this court, can stay Loo's removal pending a decision on his petition. *See* ECF Docket No. 10; *see also Rodney v. Gonzalez*, No. 05 CV 3407, 2006 WL 73731, *2 (E.D.N.Y. Jan. 10, 2006) ("the only court that may issue a stay is the court that will issue a 'decision on the petition.'"). However, because Loo's petition was filed *before* the REAL ID Act became effect in May of 2005, the court is not dismissing the case for want of jurisdiction but rather is transferring the case to the Second Circuit pursuant to § 106(c) of REAL ID Act. *C.f. Sikder v. Gonzales,* 05 CV 01833, 2006 WL 1149153 *4 (D. Col. April 28, 2006) ("[p]etitioner here, however, commenced this action in the District Court months after the date [REAL ID Act] became effective. Because the action was not pending on the [REAL ID Act]'s effective date, May 11, 2005, there is no authority in the [REAL ID Act] for this court to transfer this case to the appropriate court of appeals."); *see also Robinson v. Mule*, 05 CV 0536A, 2005 WL 1971893, at *1 (W.D.N.Y. Aug. 15, 2005) ([e]ffective May 11, 2005, a district court lacks jurisdiction to review removal order or to stay an order of removal); *Munoz v. Gonzalez*, 05 CV 6056, 2005 WL 1644165, at *1 (S.D.N.Y. July 11, 2005) (same). Therefore, because this is a transfer as opposed to a new case over which the court would have no jurisdiction, the court hereby orders that the stay of Loo's removal remain in effect unless otherwise ordered by the Secon Circuit Court of Appeals. To do otherwise, in the court's view, would deprive Loo of due process.

## **Conclusion**

For the reasons set forth above, the court transfers Counts One and Two of the petition to The Court of Appeals for the Second Circuit. To the extent that it requests that the defendants adjudicate Loo's application for adjustment of status, Count Three of the petition is also transferred to the Court of Appeals for the Second Circuit. The court denies, without prejudice, Count Three of the petition to the extent that it seeks to force defendants to adjudicate Chan's application for adjustment of status. Finally, the court declines to vacate the stay of Loo's December 16, 2004 order of removal.

SO ORDERED

DATED:    Brooklyn, New York
              March 14, 2007

                                                    /s/
                                        DORA L. IRIZARRY
                                    United States District Judge